This is a suit by the plaintiff, Paul Cashio, against the defendants, Robert Thibodeaux and his insurer, Standard Accident Insurance Company, for compensation at the rate of $20.00 per week for 400 weeks.
Plaintiff alleged that he was employed as an iron worker by Robert Thibodeaux who was engaged in the business of construction and repair of buildings, and that while so employed on August 9, 1946 he sustained an injury to his left arm caused by a glancing sliver or particle of steel which lodged in the flesh near the elbow; that believing his injury not to be serious and not being disabled, plaintiff continued to work for Thibodeaux until September 15, 1946 and afterward, during October, 1946, obtained employment as an iron worker with Jones and Laughlin Supply Company and performed the duties incident to his employment without any ill effects and no apparent disability; that plaintiff's employment with Jones and Laughlin lasted only two days and that he was not again employed at his trade as an iron worker until the 18th day of August, 1947 when he was employed by Arthur G. McGehee and Company, contractors, and plaintiff alleges that it was at this time that he discovered he was unable to perform "the duties of an iron worker due to severe pain in his left arm in the region of the above described injury and due to weakness of the arm as a result of said injury." Plaintiff also alleged that the particle of steel was still lodged in his arm in such a position as to cause him severe pain and general disability in the arm when it was subjected to any strain or pressure, all of which totally and permanently disabled him to perform work of any reasonable character.
The defendants plead the prescription of one year as a bar to plaintiff's cause of action on the ground that the alleged accident occurred on August 9, 1946 and plaintiff's suit was not filed until September 10, 1947. Defendants also filed an exception of no right and no cause of action. Testimony was offered on these pleas and the Judge of the District Court referred the plea of prescription and the exception of no cause and no right of action to the merits, whereupon the defendants filed answer which was in the nature of a general denial except that they set forth in their answer that plaintiff received no compensation "but was paid his full regular salary for work done as an iron worker, for regular time and over time, until his services were terminated by reason of the job being completed * * *". In the alternative and in the event the Court should find that the plaintiff's claim was not perempted and prescribed and that he suffered any accidental injury under the law that any recovery by the plaintiff be limited to:
1. Only the period of disability proven from the date of injury; *Page 33 
2. Or in the further alternative, to partial temporary disability only; or
3. That in no event to more than the loss of the use of an arm, and defendants so pray.
The judge of the lower court overruled the plea of prescription and also the exception of no cause of action and of no right of action and then, on the merits, rendered judgment in favor of the plaintiff and against the defendants in the sum of $25.00 which represented medical expenses paid by the plaintiff in the amount of $15.00 to Dr. J. Willard Dowell and $10.00 to Dr. Lester J. Williams, and in all other respects plaintiff's demands were rejected, the defendants to pay all costs.
From this judgment the plaintiff has appealed.
As the exception of no cause and no right of action is based upon the same ground as the plea of prescription, it is only necessary to discuss the plea of prescription. The date of the accident was shown to be on August 9, 1946 and the suit was filed on September 10, 1947. It is further shown that the plaintiff was born on February 17, 1926 and was, therefore, on the date of the accident approximately twenty years and six months of age, a minor, and both of his parents were living. It is admitted that the plaintiff's father, during plaintiff's minority and at the time of the injury, would have been the proper party to file suit on behalf of his son and that he could have done so without going through the formality of being appointed his son's tutor.
Counsel for the defendants, orally and in their brief, presented a very forceful argument in support of the plea of prescription to the effect that when the Workmen's Compensation Act was written in 1914 it was understood that those persons electing to come under its provisions would forego their rights in tort, and the law makers, evidently taking cognizance of the law of prescription with reference to minors, provided in Section 16, subd. 1 of that Act as Amended, Act No. 38 of 1918, that prescription would not run against a minor so long as he was without a tutor or curator to assert that right for him. Hence, they wrote: "* * * his duly qualified curator or tutor, as the case may be, may, in his behalf, claim and exercise such right, privilege or election, and no limitation of time, in this act provided for, shall run, so long as such incompetent or minor has no curator or tutor as the case may be," and that, therefore, this section is to insure to minors protection of their rights in the case where they have no one duly qualified to represent them, and in the present case, as the father of the plaintiff was living and qualified to represent him and file a suit on behalf of plaintiff that the prescription of one year was applicable to the case at bar.
By way of answer to the plea of prescription and contention of the defendants, the plaintiff takes the position that under Section 16, subd. 1 of the Compensation Act, which reads,
"In case an injured employee is mentally incompetent or a minor or where death results from the injury, in case any dependent as herein defined is mentally incompetent or a minor, at the time when any right, privilege or election accrues to him under this act, his duly qualified curator or tutor, as the case may be, may, in his behalf, claim and exercise such right, privilege or election, and no limitation of time, in this act provided for, shall run, so long as such incompetent or minor has no curator or tutor as the case may be,"
that prescription does not run against a minor's claim for compensation until he has had appointed a "duly qualified tutor," and that, as plaintiff never had a tutor appointed that the prescription did not begin to run until he had attained the age majority; also, that if the employee, after injury, actually earns the wages paid him by the employer, prescription runs against his claim for compensation, but conversely, if it be shown that the payments being made are in reality a gratuity and not for the performance of work, then the payment of the wage is equivalent to or in lieu of the payment of compensation, and prescription does not run for the duration of such payments. It is further contended that where the injury does not manifest itself to a compensable degree until some time after the *Page 34 
accident prescription runs from date of manifestation and not from the date of the accident.
The same question now presented was raised and decided in the case of Gospel v. Southern Carbon Company, Second Circuit 1926, 4 La. App. 272. In this case, some two years after the death of an employee his widow qualified as tutrix of her two minor children and filed a suit under the Compensation Statute. A plea of prescription of one year was filed and the contention made by the exceptor in that case was "that where the mother or father of the minor child or children survives, it is not necessary under the act that a tutor be appointed; that the mother or the father, as the case may be is there to represent the minor without being personally qualified as tutor or tutrix, and that therefore prescription runs against the minor." The Second Circuit Court of Appeal held that the Lower Court was correct in sustaining the plea of prescription as to the widow but was not correct in sustaining the plea of prescription as to the minors and in this case it said:
"Counsel are correct in their contention that the mother in this case had a right to claim and accept the compensation without qualifying as tutrix. Under the plain letter of the Civil Code and under repeated decisions of our Supreme Court, surviving parent may appear in court and prosecute or defend actions for or against their minor children without qualifying as tutor or tutrix; but we are not aware of any law compelling them to do so."
"The question of parents' responsibility for failure to qualify as tutor or tutrix and protect the rights of their minor children is another matter. The act under consideration specifically provides that where there is a surviving parent the compensation shall be paid to him or her and that the appointment of a tutor shall not be necessary. That means, as we see it, nothing more than that the survivor is not required to qualify in order to receive the compensation for the benefit of herself and the children; but it by no means implies that the right of the dependent minors to receive compensation is dependent upon the will or disposition of the parent to accept the benefits of the act in his or her favor."
"The situation of a minor, from the standpoint of being able to claim compensation under the Act in cases where the parent for any reason neglects or declines to invoke the Act in his or her behalf is the same as if the minor had no parent. To hold otherwise, would be to make the minor's right depend entirely upon the will of the parent."
The Court also in that case said:
"The dependent children can no more be deprived of their rights under this Act because of the neglect of the mother than they could be deprived of a legacy or inheritance because the mother refused or neglected to qualify as their tutrix and claim it for them."
The above case was cited with approval in Ross v. Louisiana Long Leaf Company, 16 La. App. 264, 133 So. 804, also the Second Circuit.
The Judge of the District Court overruled the plea of prescription under the authority of the Gospel v. Southern Carbon Company case, supra, and following the ruling in that case we hereby affirm the ruling of the District Judge. Plaintiff, therefore, had one year from the date on which he reached his majority in which to file the present suit and, as the year had not run, the plea of prescription must be overruled. It is, therefore, unnecessary to consider the second and third contentions of the plaintiff as to why plaintiff's cause of action had not prescribed.
As to the merits of the case, there is no doubt that plaintiff sustained an accident on August 9, 1946 in which a small particle of steel entered the fleshy part of his left arm near the elbow. The testimony reveals that after the accident the plaintiff worked five weeks more for the defendant for which he was paid his regular time and over time, and the record further shows that plaintiff never complained of his arm and performed all duties required of him in a satisfactory manner in so far as the defendant was concerned; that after the termination of his work with the defendant, he worked two days as an iron worker for *Page 35 
Jones and Laughlin and one day for Arthur G. McGehee. He did no other work during this time and it was practically a year after the accident when he worked the one day for McGehee, and it was after this one day's work that he decided he was unable to perform his regular duties as a result of the piece of steel in his arm.
Plaintiff himself testified that his arm did not trouble him after the accident while working for the defendant nor during the time he worked for Jones and Laughlin.
Dr. J. William Dowell, who was called as a witness on behalf of plaintiff, testified that he had examined the plaintiff with reference to the fragment of steel lodged in his arm, and that this fragment of steel was not in the joint itself and that, in his opinion, it was slightly larger than a buck shot. In answer to a question by counsel for the plaintiff as to whether plaintiff had suffered some substantial loss of the use of his left arm, the Doctor said that his answer would be based entirely upon what the plaintiff told him, that the findings on the loss of use of his arm other than that there was some loss of sensation were strictly subjective. He reiterated that his principal finding was the question of pain; that that was based on what the plaintiff told him and that there were no objective findings. Nowhere in this doctor's testimony do we find any diagnosis nor any definite reason from a medical standpoint as to why plaintiff could not perform the duties of an iron worker other than plaintiff's own statement that his arm pained him.
Dr. Lester J. Williams was called as a witness on behalf of the defendants and testified that he made five examinations of plaintiff's arm, the first being a fluoroscopic examination on August 9, 1946, and an X-ray examination on August 10th, 1946, the last examination being on the second of March, 1948, and having been made at the request of Dr. Darby. Dr. Williams testified that the piece of steel was about 1/2 the size of a buck shot in the left arm of plaintiff, opposite the elbow. The X-ray pictures are in evidence and the doctor testified that there was no damage to the bone structure of the arm shown in any of the pictures, and that the last pictures, taken on the second of March 1948 showed no material change in the position of the piece of steel or any damage to the boney structure.
Dr. F. U. Darby was also called by the defendant and testified that he saw the plaintiff in the Lady of the Lake Hospital in Baton Rouge, Louisiana, on August 9, 1946, and he attended and examined him immediately after his accident. He testified that "he had a minor, small laceration on the inner surface of the left arm just below the elbow, and he stated he had been chipping steel and a piece of steel had broken off of the hammer he was using and had become imbedded in his arm." Plaintiff remained in the hospital about an hour and a half, and the next day Dr. Williams was requested to take an X-ray picture of plaintiff's arm, which he did. Dr. Darby saw the plaintiff in his office twice between August 9th and August 14th and on the latter date he discharged him to return to work. The testimony shows that the plaintiff never missed any days from his work on account of the injury. Dr. Darby examined the plaintiff the last time on March 1st, 1948 and he could find no limitation of motion in the elbow, wrist, fingers or shoulder. He further testified that if the plaintiff suffered any pain or any limitation in the arm that he would only know it by what the plaintiff told him and not by anything he could find.
Thus, we see from the medical testimony that the only evidence of any disability is what the plaintiff says, as the doctors see no reason for plaintiff's disability. The only other evidence of plaintiff's disability was given by the witnesses Melton and Shattuck that he performed lighter work after the accident, however, the preponderance of the testimony convinces us that he was not knowingly given lighter work by his employer, Robert Thibodeaux. The trial judge in his written reasons for judgment stated that "it was as much incumbent upon him to prove his disability by a preponderance of the evidence as it was to prove the accident. His evidence, uncorroborated by the medical doctors, should not suffice. The fact that he worked so long after the accident without *Page 36 
complaint to his employer tends impeach his statements as to his present incapacity to work. The evidence fails to show, as claimed by him, that the particle of steel rests against a nerve in his arm. The uncorroborated testimony of the witness to this effect cannot be considered in view of the medical testimony in the case." We see no manifest error in this finding and, in fact, thoroughly agree with it.
The District Court rendered judgment for $25.00 in favor of plaintiff. This amount is made up of two medical bills, one for $15.00 to Dr. J. W. Dowell for orthopedic examination and report, and $10.00 to Dr. Williams. Although defendants in their brief contend that plaintiff was not entitled to a judgment in these amounts for the reason that they were incurred as a result of an examination of plaintiff's arm preparatory to and for the specific purpose of filing this suit, we find no answer to the appeal filed on behalf of the defendants and it is, therefore, unnecessary for us to decide this question as this judgment cannot be disturbed.
The judgment of the District Court is accordingly affirmed.